## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NETWORK HOLDINGS, INC. and WARREN G. McELWAIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Joan B. Gottschall |
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for AMCORE BANK, N.A. (successor to AMCORE INVESTMENT GROUP, N.A., Trustee under Trust Nos. 03-14951 and 05-15552), | ) ) ) ) ) ) ) ) | Case No. 10 CV 3247 |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiffs Network Holdings, Inc., and Warren G. McElwain (collectively "Plaintiffs") filed a First Amended Complaint against Amcore Investment Group, N.A. ("the Trustee"), alleging that the Trustee acted negligently and fraudulently with respect to two land trust agreements, in violation of Illinois law, by executing a note and mortgage on the trust properties and disbursing the loan proceeds. Plaintiffs seek compensatory and punitive damages and the imposition of a constructive trust against the Trustee. The Federal Deposit Insurance Corporation (the "FDIC"), acting as the Receiver for the Trustee, now moves for summary judgment on Counts I, II, III, IV, V, and XIII of the First Amended Complaint.[1] Plaintiffs move for summary judgment on Count II of the First Amended Complaint. The court finds that the Trustee did not act negligently,

---

[1] Plaintiffs previously settled with defendants other than the Trustee. Thus, the remaining counts against the Trustee now constitute the action in its entirety.

breach its fiduciary duty to Plaintiffs, or fraudulently conceal information from Plaintiffs. The court denies summary judgment for Plaintiffs on Count II of the Complaint and grants summary judgment for the FDIC on Counts I, II, III, IV, V, and XIII.

## I.  Jurisdiction and Venue

The court has jurisdiction over this matter pursuant to 12 U.S.C. § 1819(b)(2) and 28 U.S.C. § 1441, because the Office of the Comptroller of the Currency appointed the FDIC as the Receiver for the Trustee on April 23, 2010.  All rights, titles, powers, and privileges of the Trustee were assigned to the FDIC pursuant to 12 U.S.C. § 1821(c)(3)(A).  This case was originally filed in the Circuit Court of the Nineteenth Judicial Circuit in Waukegan, Illinois on December 5, 2008.  The FDIC removed it to this court pursuant to the FDIC's power, under 12 U.S.C. § 1819(b)(2), to remove any action from state to district court within 90 days of the date it is substituted as a party.  Venue is proper in this court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the state-court action was pending in Lake County, Illinois.

## II. Facts

The following facts are undisputed, except where otherwise indicated.[2]  Plaintiff Warren McElwain is the president and owner of Network Holdings, Inc., a corporation located in Schaumburg, Illinois.  Stephen Jouzapaitis is the manager of Parcel One Properties, LLC ("Parcel One") and partnered with McElwain in a number of business

---

[2]     The parties are in frequent dispute as to whether cited deposition testimony supports certain statements of fact ("SOFs") listed by the parties in support of their Local Rule 56.1 filings.  Each side mischaracterizes, quotes out of context, or draws unwarranted inferences from various snippets of testimony.  For example, the FDIC's SOFs ¶¶ 45, 46, and 48 mischaracterize the cited deposition testimony, as do Plaintiffs' SOFs ¶¶ 20, 21, 23, 24, 25, 26, 31 and 35.  Such argument is properly confined to the parties' memoranda of law, not statements of "uncontested" fact, as has been clearly explained in the court's standing order.  The court has in these instances disregarded the arguments masquerading as facts and has reproduced and cited the testimony itself rather than relying on either party's summary of the testimony.  Where there is no specific evidentiary support for a particular "fact," it has been disregarded.

ventures. Amcore Investment Group, N.A. is an Illinois corporation located in Rockford, Illinois and was, at all relevant times, the Trustee of Illinois Land Trusts numbered 03-14951 and 05-15552.

## A. McElwain and Jouzapaitis's Businesses and Trust Properties

In 1999 or 2000, McElwain and Jouzapaitis created United Land Development, LLC ("ULD"), a limited liability company with its principal place of business in Schaumburg. Each of them owned a 50 percent interest in ULD, and Jouzapaitis was its manager. McElwain and Network Holdings also partnered with Jouzapaitis and Parcel One to purchase various properties.

On or about December 30, 2002, Kemper Lakes Golf Course in Lake County, Illinois, was purchased by the Kemper Lakes Golf Club, LLC ("KLGC"), which was in turn owned by three entities: 1) United Land/Kemper; 2) EPB Properties, LLC; and 3) Crown Golf Properties, Inc. ("Crown Golf"). United Land/Kemper owned a 57 percent share of KLGC and managed the golf course. Jouzapaitis owned 51 percent of United Land/Kemper and was its manager, and McElwain owned 49 percent.

Network Holdings and Parcel One subsequently purchased two additional properties near the golf course (the "Trust Properties"). On June 18, 2003, Network Holdings, Parcel One, and the Trustee executed an Illinois Land Trust Agreement known as Trust No. 03-14951 (the "2003 Agreement"). On June 25, 2003, a parcel of vacant land surrounding the Kemper Lakes Golf Course was conveyed into the 2003 Trust. On October 21, 2005, Network Holdings, Parcel One, and the Trustee executed another Illinois Land Trust Agreement known as Trust No. 05-15552 (the "2005 Agreement").

On November 3, 2005, additional vacant land surrounding the golf course was conveyed into the 2005 Trust.

**B. The Trust Agreements and the Power of Direction**

The 2003 and 2005 Agreements are identical. Under both Agreements, Network Holdings and Parcel One are the only two beneficiaries of the Trusts, and each has an undivided 50 percent interest in the Trusts. As individuals, Jouzapaitis and McElwain are not beneficiaries of the Trusts.

The Agreements provide in ¶ A that "the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate[.]" The Agreements further state at ¶ H:

> AMCORE Investment Group, N.A., will (subject to its rights as Trustee as aforesaid) convey title to said real estate, execute and deliver deeds (including deeds conveying directly to a trust grantee) or otherwise deal with said Trust estate only when authorized to do so in writing and that (notwithstanding any change in the beneficiaries hereunder) it will, on the written direction of: <u>Stephen Jouzapaitis</u> or will, on the written direction of such other person or persons as shall be from time to time named in writing by the beneficiary or beneficiaries or on the written direction of such person or persons as may be the beneficiary or beneficiaries at the time, make deeds for, pay the proceeds thereof, in the manner so directed. . . . [T]he Trustee shall not be required to inquire into the propriety of any such direction. . . . Any person having power of direction whom is not a beneficiary, shall not have the right to assign such power without written consent of all beneficiaries hereunder.

(Defs.' Mot. Summ. J. Ex. F & G (2003 & 2005 Agreements), ECF Nos. 52-9, 52-10.)

Plaintiffs concede that McElwain's name did not appear in ¶ H of the 2003 and 2005 Agreements at the time of the transactions at issue in this case. Even so, the parties dispute whether Jouzapaitis held the sole power of direction under the 2003 and 2005

Agreements. Jo Ellyn Treadman, a Vice President and Trust Relationship Manager at Amcore Investment Group, N.A., was responsible for transactions involving the Trust Properties. Treadman stated in an affidavit that "the sole holder of the power of direction under the Land Trusts is Ste[ph]en Jouzapaitis." (Defs.' Mot. Summ. J. Ex. H (Treadman Aff.), ECF No. 52-11.) Treadman stated during her deposition that Jouzapaitis's power of direction was not coupled with a beneficiary interest. She testified in her deposition that she did not know what the legal import of that distinction was, nor did it make any difference to her.

Treadman acknowledged in her deposition that ¶ A of the Agreements provided that any beneficiary would have a power of direction. (Shebar Decl. Ex. D (Treadman Dep.) 25:3-10, ECF No. 65.) She then stated that "another part of the agreement . . . actually points out who was given the power of direction by the beneficiaries." (*Id.* 25:21-23.) Treadman stated that the fact that the beneficiaries were given the power to direct the trust assets was not contradicted by the fact that Jouzapaitis was specifically named as holding the power of direction. (*Id.* 27:5-14.) She explained, "When we are directed by an agreement that is signed by all beneficiaries, which this is, that says that we will act on the direction of a singular person in this case, that is who we're going to take the direction from. If both beneficiaries direct us to do something, we will also take that." (*Id.* 28:4-10.)

On June 20, 2006, McElwain, on behalf of Network Holdings as beneficiary, submitted an amended power of direction to the Trustee through his attorney, Robert Hollis. The amendment provided that McElwain, in addition to Jouzapaitis, would hold a

power of direction over the Trusts, so that the signatures of both would be required in any dealings concerning the Trust Properties.

Treadman signed the amended power of direction on behalf of the Trustee on June 20, 2006. On July 26, 2006, however, she cancelled the amendment. Treadman testified in her deposition that she was approached by Louise Gorsch, a Land Trust Administrator at Amcore Investment Group, N.A., after the amendment was signed. Gorsch told Treadman that the Trustee needed "the other beneficiary" to sign the amendment. Treadman testified that she reviewed the amendment and determined that it should be cancelled. She "instructed [Gorsch] to call Attorney Hollis and let him know that we were going to cancel it." (Defs.' Resp. to Pls.' SOF Ex. G (Treadman Dep.) 43-45, ECF No. 61-3.) On August 17, 2006, Gorsch wrote a letter to Hollis stating that the amendments were "cancelled" because "all beneficiaries under the trusts did not sign the amendments" and requesting "the additional signature of Stephen Jouzapaitis." (Defs.' Resp. to Pls.' SOF Ex. G (Letter), ECF No. 61-7.)

Jouzapaitis testified in his deposition that he informed the Trustee by phone that he did not consent to put McElwain in a co-power of direction over the trust. (Defs.' Resp. to Pls.' SOF Ex. D (Jouzapaitis Dep.) 28:21-23, 29:13, ECF No. 61-4.)

On August 28, 2006, McElwain's attorney, Hollis, wrote a letter to Treadman. Treadman stated in her deposition that she recognized the letter and that it would have been received on August 30, 2006. (Treadman Dep. 49:13-23.) The letter stated that McElwain was a beneficiary of the 2003 and 2005 Agreements and that:

> On June 20, 2006, AMCORE was presented with Amendments to the foregoing Land Trusts which named Warren McElwain as an additional holder of the power of direction in respect to said Land Trusts. The Amendments were accepted by AMCORE on that date and certified

copies of the accepted Amendments were provided to me by you on that date. You are hereby put on notice that notwithstanding any attempted action and/or direction to you as Trustee by any other beneficiary of or holder of a power of direction regarding said Land Trusts, Warren McElwain as beneficiary and holder of the power of direction instructs you not to transfer any interest(s) of whatsoever type (whether by deed, assignment, mortgage, etc.) in said Land Trust(s), without the express written consent and direction of Warren McElwain.

(Pls.' SOF (Treadman Dep.) Ex. 7, ECF No. 57-7.)

When asked whether, after receiving the letter, she had a sense that the beneficiaries were having disagreements about the trust property, Treadman stated, "I wouldn't be concerned with that." (Treadman Dep. 51:3-8.) Treadman was then asked, "doesn't [the letter] indicate to you that there's some concern on the part of an interested party in the trust about how the trust assets may . . . be used?" She responded, "I'd say yes." (*Id.* 53:4-17.)

On September 1, 2006, the Trustee's counsel sent Hollis a letter stating that McElwain did not have "a direct 50% beneficial interest in the . . . trusts. . . . Rather, the beneficiary appears to be a limited liability company which Mr. McElwain may have an interest in." The letter stated that "the signature of the other beneficiary, Steve Jouzapaitis" was necessary to name McElwain as an additional holder of the power of direction. (Shebar Decl. Ex. B (Treadman Dep. Ex. 8), ECF 57.)

Jouzapaitis and McElwain eventually agreed to amend the power of direction to add McElwain as a joint holder of the power of direction on July 31, 2007.

## C. The September 12, 2006, Loan and Mortgage

On August 1, 2006, McElwain sent Jouzapaitis an email stating "I will not participate in any of your additional refinancing efforts until all loans made on my behalf [are] paid in full." (Jouzapaitis Dep. 39:12-18.)

On September 7, 2006, Jouzapaitis executed a letter of direction instructing the Trustee to execute and deliver mortgage documents for a $5.6 million loan from Venture Equities Management, Inc. at an interest rate of 20 percent (the "VE Loan"). Treadman received the letter of direction from Jouzapaitis. On or about September 8, 2006, Treadman authorized, and the Trustee signed, a mortgage, promissory note, and assignment of rents for the VE Loan. On September 12, 2006, a loan closing occurred at Regent Title Insurance Agency in connection with the VE Loan. The VE Loan was evidenced by a promissory note executed by Parcel One, the Trustee, and ULD in favor of Venture Equities in the amount of $5.6 million. It was secured by a mortgage executed by Parcel One and the Trustee pledging the Trust Properties as collateral for the loan.

Jouzapaitis testified at his deposition that he went forward with the loan without telling McElwain about it, because McElwain had told him "that he wasn't going to participate" in financing. (Jouzapitis Dep. 64:2-4, 13-15.) Jouzapaitis testified that he did not "recall" telling the Trustee not to disclose the circumstances surrounding the Loan to McElwain. (*Id.* 65:5-6.) When asked why the beneficiaries were not contacted when the Trustee received a request to execute a loan document, Treadman stated that the "letter of direction [was] signed by the power to direct all beneficiaries approved of in their trust agreement. We are not obligated to contact every single beneficiary when there's a power to direct already appointed." Treadman was asked why McElwain was not contacted, given the August 28, 2006, letter. She replied, "I don't know." (*Id.* 82:24-83:2.)

**D. Disbursement of the VE Loan Proceeds**

The VE Loan was used to pay off the following loans: (1) two loans from Amcore Bank, N.A. (an affiliate of the Trustee) that were used for the acquisition of the property in the 2003 Trust, with outstanding balances of $739,764.34 and $792,709.18; (2) a loan from American United Bank and Trust Company that was used for the acquisition of the property in the 2005 Trust, with an outstanding balance of $656,015.53; and (3) a loan from Crown Golf to KLGC with an outstanding balance of $2,928,037.89. McElwain and Jouzapaitis had guaranteed the Amcore Bank and the American United Bank and Trust Loans. Amcore Bank, N.A., American United Bank and Trust, and Crown Golf each issued payoff letters. Jouzapaitis and his attorneys directed Regent Title to disburse the proceeds of the VE Loan based on the payoff letters. The excess proceeds of the VE Loan, in the amount of $455,240.06 (after fees and insurance), went into ULD's operating account. Jouzapaitis testified in his deposition that the proceeds were used as working capital for ULD. (Jouzapaitis Dep. 164:7-9.) McElwain testified in his deposition that after the money was put into the ULD account, "Jouzapaitis shuffled half of it out into his personal bank account." (Shebar Decl. Ex. C. (McElwain Dep.) 145:17-146:6, ECF No. 65.)

The Trustee never received the proceeds of the VE Loan. It kept no records showing to whom it delivered the signed VE Loan documents. The Settlement Statement and Refinance Summary, documents required for the refinancing process, contained a signature block for the Trustee's signature, but the Trustee did not sign either document. In her affidavit, Treadman stated that the Trustee "has seen" the documents "[a]s a result of this lawsuit." Treadman also testified in her deposition that, at the time the letter of

direction came from Jouzapaitis, she did not know what loans would be paid off with the proceeds of the mortgage. (Treadman Dep. 70:4-7.) She further testified that the Trustee had no interest in making sure that the proceeds of a loan were distributed in accordance with the way the beneficiaries wanted it distributed, and that once loan documents were signed, it did not matter to the Trustee where the money went. She stated, "The purpose of the land trust is to hold fee simple title to real estate. We only act and sign documents at direction. We don't have any management and authority to do anything else." (*Id.* 89:20-23.)

The parties disagree as to whether the VE Loan was necessary. The FDIC argues that the loans used to purchase the Trust Properties were either in default or about to mature, and that the loan that KLGC owed to Crown Golf was also in default and about to be foreclosed. Jouzapaitis testified in his deposition that "two loans to AMCORE Bank . . . were mature and past due, and there was also a loan to American United Bank . . . that was three weeks from being due, or mature, and then the loan from Crown Golf matured the first of the year. They granted us two three-month extensions, and so that was six months past due, and paying a default rate. So those were the loans that got paid off." (Defs.' Mot. Summ. J. Ex. B (Jouzapaitis Dep.), ECF No. 52-5.) Plaintiffs deny that the loans were in default. They point to a "Refinance Summary" showing the "Payoff" on the four loans to be made with the September 12, 2006 loan, and to documents showing the balances due and payoff schedules for those loans. According to Plaintiffs, the payoff schedules show no penalties or default interest. (Shebar Decl. Ex. A, ECF No. 65.)

McElwain acknowledged in his deposition that part of the VE Loan was used to pay off what KLGC owed to Crown Golf. (Defs.' Mot. Summ. J. Ex. E (McElwain Dep.) 136:7-11, ECF No. 52-5.) He further acknowledged that the loan from Crown Golf was in danger of going into default. He stated, however, that he believed KLGC might have pursued other options to resolve the loan (*id.* 139:17-140:24), although if Crown rejected those overtures, it was entitled to be paid (*id.* 141:1-5). McElwain denied that the use of the VE Loan to pay of the Crown Golf loan benefitted him. (*Id.* 135:22.) He explained that although paying off the loan benefitted KLGC, he personally "didn't want [his] development properties to be devalued to benefit the golf course because [Jouzapaitis] . . . was the manager of the golf course, and [they] were at odds." (*Id.* 139:2-5.) He further stated, "The detriment [of the refinancing] far outweighed the benefit" because "the benefit . . . was to KLGC. The detriment to me was to completely dewater [sic] a piece of valuable asset that I owned half of, make it virtually worthless so that the golf course could benefit. I was completely opposed to the proposition." (*Id.* 141:19-142:1.)[3]

### E. The State Court Proceedings

Plaintiffs' First Amended Complaint alleges claims against the Trustee for negligence (I), breach of fiduciary duties (II), fraudulent concealment (III), a constructive trust (IV), violation of Illinois' Trust and Trustees Act (V), and civil conspiracy (XIII). Before the case was removed the federal court by the FDIC, the Trustee filed a motion for judgment on the pleadings on Counts I, II, III, IV, and XIII and a motion to dismiss Count V. On April 30, 2009, the state court granted the motion with regard to Counts I

---

[3] Plaintiffs' SOF ¶ 39 states that the VE Loan went into default, and the balance escalated to $10,600,000 due to accrued interest and penalties, forcing Plaintiffs to repay $7,500,000 of the new balance and refinance the remainder. The cited deposition testimony (Jouzapaitis Dep. 111), however, does not support the statement. The evidence does show that, in November 2007, KLGC secured new loans in the amounts of $7,400,000 and $3,747,000.

and II insofar as it found that the land trustee's execution of the note and mortgage was proper, but denied the motion as to the issue of the disbursement of the loan proceeds. The court found that "a fiduciary relationship under certain facts and circumstances can exist between a land trustee and its beneficiaries." The court denied the motion for judgment on the pleadings with respect to Counts III, IV and XIII. The court granted the motion to dismiss Count V. (Def.'s SOF Ex. D (Order), ECF No. 52-7.)

### III. Standard for Summary Judgment

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is called for when the nonmoving party is unable to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### IV. Analysis

**A. Count I - Negligence**

Plaintiffs' first claim is that the Trustee acted negligently, in violation of Illinois common law, by executing the mortgage financing documents required for the VE Loan, disbursing the loan proceeds to parties who were not trust beneficiaries, acting contrary to the written direction of a trust beneficiary, and failing to pursue an interpleader action in order to determine the rights of the trust beneficiaries. This, Plaintiffs argue, deprived

them of a 50 percent beneficial interest in the Trust Properties. (First Am. Compl., ECF No. 1-2.)

The FDIC urges the court to adopt the state court's order holding that the Trustee's execution of the note and mortgage was proper. Law of the case applies to rulings made in state court prior to the removal of a case; the orders remain binding unless they are set aside. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1037 (7th Cir. 1998); *FDIC v. Parzygnat*, No. 10 C 7038, 2011 WL 3704731, at *5 (N.D. Ill. Aug. 23, 2011). Law of the case does not prevent a court from revisiting a prior ruling, but it creates a presumption in favor of the prior judge's ruling. *Galvan v. Norberg*, 678 F.3d 581, 2012 WL 1570876, at *6 (7th Cir. May 7, 2012). In this case, however, the state court order consists of a single sentence. The basis of the decision is not explained, except to say that "a fiduciary relationship under certain facts and circumstances can exist between a land trustee and its beneficiaries." Given this lack of analysis, the court will evaluate the counts previously dismissed by the state court. *See, e.g.*, *Cima v. Wellpoint Healthcare Networks, Inc.*, No. 05 CV 4127, 2006 WL 1914107, at *4 (S.D. Ill. July 11, 2006) (due to lack of analysis in state court order, court independently examined claim).

To establish a disputed issue of fact on a claim of negligence, Plaintiffs must present evidence of "the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). The first question is what duty of care the Trustee owed Network Holdings, as a beneficiary of the land trusts. Illinois land trusts have been described as "a unique creature of Illinois law whereby real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full

management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the legal title. . . . While legal title to the real estate is held by the trustee, . . . . [t]he trustee agrees to deal with the res of the trust only upon written direction of the beneficiaries." *In re Marriage of Gross*, 756 N.E.2d 312, 315 (Ill. App. Ct. 2001). In other words, the trustee "is a mere vessel of title" that "exercises no control over the property and only acts according to the beneficiaries' directions." *Id.*

The trust agreement itself determines the "relationship between the trustee, the beneficiaries, and the holder of the power of direction." *In re Estate of Bork*, 496 N.E.2d 329, 333 (Ill. App. Ct. 1986). Most trusts vest the power of direction in the beneficiaries, but a variety of arrangements are possible. HENRY W. KENOE, KENOE ON LAND TRUSTS § 2.3, at 2–10 to 2–11 (1989). A land trustee's duties are thus determined by the language of the instrument. *Stuart v. Cont'l Ill. Nat'l Bank & Trust Co.*, 369 N.E.2d 1262, 1271 (Ill. 1977) ("It is axiomatic that the limits of a trustee's powers are determined by the instrument which creates the trust."). The court therefore finds that the Trustee's duty to Network Holdings as a beneficiary of the 2003 and 2005 Trusts was to administer the Trusts in accordance with the language of the Trust Agreements.

1. Execution of the Note and Mortgage

The next question is whether the Trustee acted negligently in administering the Trust Agreements by executing the note and mortgage at Jouzapaitis's direction. When a trust contains express language giving someone the power to direct the trustee with

regard to title to the property held by the trust, the individual holding that power of direction can direct the trustee to take actions that include selling the trust property. *Hoxha v. LaSalle Nat'l Bank*, 847 N.E.2d 725, 730 (Ill. App. Ct. 2006) (explaining that a beneficiary may sell the trust property "as long as the trust agreement vests the beneficiary with the sole right to direct the trustee to convey title").

A land trustee may be liable, however, if it acts negligently or contrary to the terms of a trust agreement in the conveyance of trust funds or property. *See, e.g.*, *Stuart*, 369 N.E.2d at 1271 (bank's exercise of unauthorized distributive power constituted a breach of its duty to carry out the trust according to its terms); *Lake City Corp. v. Mich. Ave. Nat'l Bank*, 337 N.E.2d 251, 254 (Ill. App. Ct. 1975) (trustee acted improperly by conveying realty without the written consent of the beneficiary, when that consent was required under the terms of the trust agreement). For example, a land trustee may act negligently if it knows or should know that a person exercising the power of direction over trust property is doing so illicitly and nonetheless takes direction from that person. *Progressive Land Developers, Inc. v. Exch. Nat'l Bank of Chi.*, 641 N.E.2d 608, 613 (Ill. App. Ct. 1994). In *Progressive Land Developers*, a trustee breached its duty by negligently failing to verify that the persons who directed it to convey trust property had the authority to do so. *Id.*

In this case, the undisputed facts show that Jouzapaitis held a power of direction at the time the loan documents and mortgage were executed by the Trustee. The Trust Agreements did not require the assent of the beneficiaries for Jouzapaitis to exercise that power. Illinois courts have held that person specifically named in a trust agreement may direct the trustee to convey title without the concurrence of the other beneficiaries. *See In*

*re Estate of Bork*, 496 N.E.2d at 333 ("It is clear that, until his death, deceased had the power to direct the trustee to convey title without the concurrence of any other holder of part of the beneficial interest."). Because Jouzapaitis held the power of direction, the Trustee was required to comply with his written instructions. *See Estate of Bowgren v. C.I.R.*, 105 F.3d 1156, 1163 (7th Cir. 1997) (citing RESTATEMENT (SECOND) OF TRUSTS § 185 ("If under the terms of the trust a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power.")). Not only was the Trustee not negligent in following Jouzapaitis's directive, it would have breached its duty to act in accordance with the Trust Agreements had it failed to do so.

Plaintiffs argue, however, that Jouzapaitis did not hold the *sole* power of direction. They contend that Network Holdings, as a beneficiary, also held a power of direction. Plaintiffs point to ¶ A of the Trust Agreements, which states that "the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate . . ." They also point to the latter part of ¶ H, which states that, in addition to the person specifically named, the power of direction is also held by "the beneficiary or beneficiaries" of the Agreement. Plaintiffs argue that this means that Network Holdings, as a beneficiary, could exercise a power of direction as to the Trust Properties, even though McElwain was not specifically named as a holder of the power of direction. Plaintiffs argue that the Trustee should therefore have followed the direction in the August 28, 2006, letter "not to transfer any interest(s) of whatsoever type (whether by deed, assignment, mortgage, etc.) in said Land Trust(s), without the express written consent and direction of Warren McElwain."

According to Plaintiffs, the letter was a valid direction by a beneficiary that the Trustee negligently failed to obey.

Having examined the language of the Trust Agreements, the court concludes that, while Jouzapaitis held a power of direction which he could exercise unilaterally, Network Holding and Parcel One—the beneficiaries of the Agreements—could also exercise the power of direction or name a new holder of the power of direction, but only by acting jointly. A single beneficiary could not exercise the power of direction without the assent of the other beneficiary.

In reaching this conclusion, the court finds that the purpose of ¶ A, which explains that each beneficiary's interest in the Trust Properties is limited to ("consist[s] solely of") a power of direction and the ability to manage and control the real estate, is to explain that the beneficiaries do not hold title to the Trust Properties, but rather have a beneficial interest in them. The fact that the beneficiaries' interest is limited to a power of direction is not inconsistent with the more specific provisions in ¶ H that set out how the power of direction may be exercised.

As to ¶ H, the court finds that the words "beneficiary or beneficiaries" refer to those persons named as holding interests in the Trust Properties. The "or" reflects that fact that interests in the trust may be assigned, and there may at times be a single or multiple beneficiaries. Thus, where the Agreements state that the Trustee will deal with the estate "on the written direction of such person or persons as may be the beneficiary or beneficiaries at the time," the language refers to *all* the current beneficiaries of the trust. In other words, the beneficiaries may direct the Trustee by acting together. This interpretation is confirmed by the fact that ¶ H later specifies that the "written consent of

all beneficiaries" is required to assign the power of direction. Moreover, this interpretation avoids the possibility that the Trustee will be forced to comply with contradictory directives from different beneficiaries.

Prior to July 31, 2007, the Trust Agreements were not amended to add McElwain as a joint holder of the power of direction or to strip the power from Jouzapaitis. The court finds that the Agreements are properly read to require the consent of all beneficiaries to amend the holder of the power of direction. The Agreements state that the power of direction may be given to "such other person or persons as shall be from time to time named in writing by the beneficiary or beneficiaries." And as previously explained, the Agreements further provide, "Any person having power of direction whom is not a beneficiary, shall not have the right to assign such power without written consent of all beneficiaries hereunder." (Trust Agreements at ¶ H.) McElwain was not a beneficiary himself. He could be named as such only with the consent of all beneficiaries to amend the Agreements—which did not happen until July 31, 2007. McElwain's June 20, 2006, attempt to unilaterally amend the power of direction was ineffective because all trust beneficiaries did not assent to it. The Trustee thus properly declined to make the amendment without Jouzapaitis's assent.

## 2. Disbursement of the Loan Proceeds

As to the Trustee's duty with respect to the disbursement of the loan proceeds, the court finds that there is no evidence that the Trustee disbursed the loan funds itself. The Trustee never received or held the actual proceeds. Plaintiffs argue, however, that the Trustee might have seen the disbursement documents. They dispute that the Trustee never saw the Settlement Statement and Refinance Summary, arguing that Treadman did

not actually state that the Trustee never saw the documents *prior* to this litigation. They also argue that the Trustee must have authorized the disbursement of the VE Loan proceeds, because it was directed to execute a promissory note in the amount of $5.6 million at an interest rate of 20 percent, signed documents essential to the VE Loan, and knew the proceeds would be disbursed.

Even if the Trustee was aware of how the loan proceeds would be disbursed, however, Plaintiffs present no evidence showing that the Trustee had the ability or responsibility to influence where the loan proceeds went. Under the terms of the Trust Agreements, the Trustee was not required to oversee how the loan funds were distributed. The Agreements state that "the Trustee shall not be required to inquire into the propriety of any . . . direction." Rather, the Trusts reserved "to the beneficiary the full management and control of the property." The Trustee's role was to "to deal with the res of the trust only upon the direction of the beneficiary or person named as having the power of direction and [wa]s not required to inquire into the propriety of any direction received." *Culicchia v. Hupfauer*, 884 N.E.2d 730, 733 (Ill. App. Ct. 2008) (internal quotation marks and citations omitted).

Because the Trustee properly dealt with the Trust according to the direction of the person named in the Trust Agreements as the holder of the power of direction, the court holds that the Trustee was not negligent in carrying out its duty to administer the trust in accordance with the provisions of the instrument.

## B. Count II - Breach of Fiduciary Duty

Land trustees in Illinois are subject to the fiduciary duties imposed by the law on all trustees, which are governed by the "the general principles of trust law" and flow from

the relationship between trustee and beneficiary. *Home Fed. Sav. & Loan Ass'n of Chi. v. Zarkin*, 432 N.E.2d 841, 845-46 (Ill. 1982) (*superseded in part by statute*, Ill. Rev. Stat. ch. 148, ¶¶ 81-84 (1985), *as recognized in Slovick v. All Am. Bank of Chi.*, 516 N.E.2d 947, 950 (Ill. App. Ct. 1987) ("While it is true that these sections do overrule the narrow holding of Zarkin, the legislature did not abolish all fiduciary duties for land trustees.")). But because land trustees are subject to the direction of the beneficiary or person named with the power of direction, a land trustee does not owe a beneficiary all of the fiduciary duties of a conventional trustee. *S. Chi. Sav. Bank v. S. Chi. Sav. Bank as Trustee*, 533 N.E.2d 480, 484-45 (Ill. App. Ct. 1989).

In this case, Plaintiffs first claim that the Trustee breached its fiduciary duties by executing the VE Loan documents. The court has previously explained what the Trust Agreements required of the Trustee, and that the Trustee properly followed the directives of the person who was the holder of the power of direction. Nothing in the Agreements required the Trustee to balance the interests of the beneficiaries rather than following the directive of the holder of the power of direction. Indeed, the Trustee might well have breached its fiduciary duty if it acted solely on the instruction of Network Properties or McElwain, defying the instruction of the person who held the power of direction.

Plaintiffs further argue that the Trustee breached its fiduciary duty by following directives to deal with the Trust Properties after it was made aware—by Plaintiffs' request that it refrain from such action—of a dispute between the beneficiaries. Plaintiffs argue that a trustee may not take action favoring one beneficiary over the other, and that the Trustee should have sought court action to resolve the dispute and intervened to make sure that Plaintiffs received their fair share of the proceeds of the VE Loan.

In support of their arguments about the scope of a trustee's fiduciary duty, Plaintiffs cite *Volini v. Dubas*, 547 N.E.2d 665, 667-68 (Ill. App. Ct. 1989), *Progressive Land Developers*, 641 N.E.2d at 613, *Bornstein v. First United*, 567 N.E.2d 870, 874 (Ill. App. Ct. 1992), and *In re Grabill Corp.*, 121 B.R. 983, 1000 (N.D. Ill. 1990). The court has reviewed these cases and finds that, although they describe the contours of the fiduciary duty, each is distinguishable from the facts here. In *Volini*, an agreement provided that the trustee would deal with the property only upon the written authorization of the trust beneficiary. As the complaint alleged that the trustee approved a mortgage loan secured by the properties without that authorization, the court held that the plaintiff had stated a claim for breach of fiduciary duty. 547 N.E.2d at 667-68. That result, however, relied on language in the trust agreement requiring the trust beneficiary's authorization for such action—language absent from the Trust Agreements at issue here.

*Progressive Land Developers*, meanwhile, involved an improper conveyance of trust properties at the direction of officers whose relationship to the estate was not verified. 641 N.E.2d at 614. The "resolutions purporting to change the power of direction were . . . of questionable effect." *Id.* The issue was thus whether the persons who directed the transfers of trust property had authority to do so. That is not the issue here, as there is no question that Jouzapaitis had a power of direction over the trust property. Indeed, if *Progressive* holds any lesson, it is that a Trustee must be careful to ensure that any attempt to amend the power of direction is valid—which is precisely what the Trustee did in requiring the consent of all beneficiaries for an amendment.

In *Bornstein*, meanwhile, a trustee was held to have acted properly by filing an interpleader action when faced with conflicting claims between beneficiaries of the trust.

But that holding turned on the fact that the power of direction was ambiguous: although the power was limited to directing proceeds of the trust property to be applied toward a loan, the hold of the power had attempted to transact other business with the trust assets. 567 N.E.2d at 874. Here, the power of direction was not ambiguous and was not being exercised improperly by Jouzapaitis under the terms of the Trust Agreements.

Finally, the lesson of *Grabill* is that, if a trustee knows that the holder of the power of direction is exercising it improperly, the trustee should refuse to act. 121 B.R. at 1000. In that case, a counterclaim alleged that the trustee knew that the holder of the power of direction was "effectively converting" the beneficiary's property but permitted the transfers. The holder was allegedly using the trust assets to secure his personal loans without the required authority of the beneficiary corporation. *Id.* at 1002. The court held that a "land trustee is required to protect the beneficiaries from abuse of the power of direction where it has knowledge of that fact or where knowledge can be imputed to it." *Id.* But while holding that the counterclaim stated a valid cause of action, the *Grabill* court noted that the opposing party had a "heavy burden" to establish that the trustee knew the holder was acting wrongfully. *Id.* at 1001. Here, although the Trustee was notified that McElwain disagreed with Jouzapaitis's decision to pursue financing, there was no evidence that the holder of the power of direction was conveying the property to himself or acting without the required authority, as was alleged in *Grabill.* Plaintiffs therefore presented no evidence that the Trustee knew Jouzapaitis was acting wrongfully of abusing the power of direction.

In sum, the court finds that none of the cases cited by Plaintiffs establish that, under the facts here, the Trustee had to do more than implement the Agreement as

written. Nothing required the Trustee to "inquire into the propriety" of the distribution of the loan proceeds, absent any knowledge that the transaction was wrongful or unauthorized. If the power of direction is used in a lawful and authorized way and comports with the terms of the trust agreement, the trustee has satisfied its fiduciary duty.

As to Plaintiffs' argument that the Trustee should have filed an interpleader action, there was no dispute as to whether Jouzapaitis had a power of direction and therefore no need for the Trustee to seek court authority to implement his directives. Although a trustee might have a duty to avoid carrying out an unlawful or unauthorized transaction, the limited fiduciary duty of a land trustee does not require it to evaluate whether a transaction is in the best business interests of the beneficiaries or to involve itself in a dispute between the beneficiaries as to the best course of action regarding the trust property. If the holder of the power of direction is acting with authority under the terms of the trust agreement, a trustee need not turn to the courts any time it suspects a business dispute among the trust beneficiaries. Treadman testified that that such a dispute would not be of concern to the trustee, and the court agrees.

Finally, a land trustee owes the beneficiaries of a land trust the duty of complete loyalty, excluding all self-interest, and prohibiting the land trustee from dealing with the trust property for its individual benefit. *Volini v. Dubas*, 613 N.E.2d 1295, 1300 (Ill. App. Ct. 1993). Plaintiffs suggest that the Trustee "was in favor of pushing through the VE Loan" because its affiliate, Amcore Bank, would benefit from having outstanding loans repaid from the loan proceeds. But there is no evidence in the record to support this assertion of self-dealing. Under Illinois' Land Trust Act, merely being a creditor of the land trust "shall not be deemed evidence of a breach of, any fiduciary duty owed by said

trustee to the beneficiaries." Ill. Rev. Stat. ch. 148, ¶ 83. The court concludes that the Trustee did not breach its fiduciary duties by executing the note and mortgage or authorizing the distribution of the loan proceeds.

## C. Count III – Fraudulent Concealment

Plaintiffs argue that the Trustee fraudulently concealed the VE Loan from the Plaintiffs before the loan proceeds were disbursed. The elements of a claim for fraudulent concealment under Illinois law are: (1) the concealment of a material fact where there is a duty to speak; (2) intent to induce a false belief; (3) "the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist;" (4) the injured party would have acted differently had he been aware of the fact; and (5) injury. *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 815 (Ill. App. Ct. 1998).

Here, there is evidence establishing a genuine dispute as to whether the VE Loan was concealed from Plaintiffs. The FDIC argues that the Trustee did not knowingly conceal the execution of the note and mortgage and the disbursement of the loan, and that the Trustee did not authorize the disbursement of the loan proceeds. The undisputed facts show, however, that Jouzapaitis went ahead with the VE Loan without McElwain's knowledge, because he knew McElwain would not consent to the loan. Jouzapaitis testified that he did not "recall" telling the Trustee not to disclose the circumstances surrounding the loan to McElwain, but a question of fact exists as to whether he in fact told the Trustee not to do so.

That possible concealment matters, however, only if the Trustee had a "duty to speak," meaning a duty to communicate with Plaintiffs about the VE Loan. Plaintiffs cite *Williams v. Independence Bank of Chicago*, in which the court found that, although one beneficiary had a power of direction, another who did not should have received notice of pending foreclosure proceedings involving the trust property. 559 N.E.2d 201, 205 (Ill. App. Ct. 1990). Similarly, in *Alcoa Building Products, Inc. v. LaSalle National Bank*, a trustee had a duty to notify a beneficiary of pending foreclosure proceedings. 379 N.E.2d 66, 68-69 (Ill. App. Ct. 1978).

*Williams* and *Alcoa*, however, are distinguishable from this case, because they involved a dispute as to whom the beneficial rights to the property belonged. Notice was required to allow the beneficiaries to intervene in the foreclosure actions and defend their potential interest in the property. The *Alcoa* court clarified, "Our decision today is limited only to the unique set of facts presented in the instant case." *Id.* at 68-69. Here, in contrast, there was no dispute as to who the beneficiaries of the trust were, and Plaintiffs could not have stopped the execution of the note and mortgage, as the Trustee was required to comply with the exercise of the power of direction by Jouzapaitis. Treadman testified that the Trustee was "not obligated to contact every single beneficiary when there's a power to direct already appointed." The court concludes that, under the circumstances, her assessment was correct. Where the power to direct was exercised lawfully and with authority, and absent a requirement in the Trust Agreements to give notice to the beneficiaries of any dealings involving the title to the Trust Properties, nothing compelled the Trustee to communicate with the beneficiaries before executing the note and mortgage.

**D.  Count IV – Constructive Trust**

Count IV of the First Amendment Complaint seeks a constructive trust.  A court may, as an equitable remedy, impose a constructive trust on proceeds of a breach of fiduciary duty.  *Baumgartner v. First Church of Christ, Scientist*, 490 N.E.2d 1319, 1326 (Ill. App. Ct. 1986).  A constructive trust, however, is a remedy, not a separate claim, and "some form of wrongdoing is a prerequisite to the imposition of a constructive trust." *Volini*, 613 N.E.2d at 1303.  Plaintiffs acknowledge as much.  As the court has found no evidence of negligence, no breach of fiduciary duty, and no other basis on which to hold the Trustee liable, the court grants the FDIC summary judgment on Count IV.

**E.  Count V – Violation of Trust and Trustees Act**

Count V of the First Amended Complaint claims that the Trustee violated the Illinois Trusts and Trustees Act, 765 Ill. Comp. Stat. 5/1 *et seq*.  The state court previously dismissed Count V for failing to state a cause of action.  The FDIC argues that the Act does not apply to land trusts; the Act itself states that "the provisions of this Act do not apply to any . . . land trust." *Id.* at 5/3(2).  Plaintiffs admit this.  The court adopts the state court's ruling dismissing Count V as the law of the case.

**F.  Count XIII – Civil Conspiracy**

Plaintiffs' final claim is that the Trustee conspired with Jouzapaitis and others to conceal the VE Loan and the disbursement of the loan proceeds from Plaintiffs.  The elements of a civil conspiracy claim under Illinois law are: 1) an agreement 2) to accomplish through concerted action "either an unlawful purpose or a lawful purpose by unlawful means," and 3) an act in furtherance of the agreement.  *McClure v. Owens Corning Fiberglass Corp*., 720 N.E.2d 242, 258 (Ill. 1999).  The court finds no evidence

that the Trustee entered into an agreement with Jouzapaitis to commit an unlawful act. Rather, as has been explained, the Trustee acted properly according to a directive that it received from Jouzapaitis, as the holder of the power of direction. As Plaintiffs cannot establish the first element of a civil conspiracy claim, the court grants summary judgment for the FDIC on Count XIII.

## V. Conclusion

The court denies summary judgment for Plaintiffs on Count II and grants summary judgment for the FDIC on Counts I, II, III, IV, V, and XIII of the First Amended Complaint. The case is dismissed.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 8, 2012